Eugene A. JOHNSON,
Plaintiff–Appellee,

v.

ESTATE of Mark A. LACCHEO, and James Overstreet, Defendants–Appellants,

City of Eastlake, Defendant.

No. 90–3694.

United States Court of Appeals, Sixth Circuit.

Argued March 29, 1991.

Decided June 5, 1991.

Brooke F. Kocab, Albert L. Purola (argued), Wiles & Richards, Willoughby, Ohio, for plaintiff-appellee.

Vincent A. Feudo, William F. Schmitz (argued), Kitchen, Messner & Deery, Cleveland, Ohio, for defendants-appellants.

Before GUY and RYAN, Circuit Judges, and JOINER, Senior District Judge.[*]

RYAN, Circuit Judge.

Defendants, two police officers from Eastlake, Ohio, Mark A. Laccheo and James Overstreet, appeal the district court's denial of their claim for qualified good faith immunity in this action under 42 U.S.C. §§ 1981, 1982, 1985, 1988, alleging unreasonable seizure, prosecution without probable cause, and unlawful detention. The issue on appeal is whether the district court erred in deciding that defendants were not entitled to qualified immunity. For the following reasons, we reverse.

## I.

On November 25, 1986, plaintiff, Eugene A. Johnson, while acting in his capacity as a security guard at Eastlake's Cleveland Electric Illuminating Company ("CEI"), admitted an employee to the plant premises through a security gate. A police car with flashing lights followed. The police officer driving the car, Overstreet, stopped and identified himself to Johnson and explained that he was pursuing the car that had just entered the gate in order to issue the driver a traffic citation. Although the gate was open, Johnson told Overstreet that he could not admit him.

Officer Laccheo arrived in a second police car after being called by Overstreet. Upon Laccheo's arrival, Johnson permitted Overstreet to enter the plant, whereupon Overstreet issued the traffic citation to the CEI employee. Laccheo then requested Johnson's identification. Johnson provided Laccheo with his Ohio State Security Guard

---

[*] The Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation.

registration card, but Laccheo rejected this identification stating that it "was not good enough." Johnson then gave Laccheo his driver's license. Thereafter, Laccheo placed Johnson under arrest for obstructing official business. Johnson was taken to the Eastlake Police Station where he was questioned, fingerprinted, and photographed. Johnson was prosecuted for obstructing official business under Ohio Rev. Code Ann. § 2921.31. However, the charges were dismissed in July 1987.

Johnson brought this action under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 against defendants in October 1987, charging deprivation of his First, Fourth, Fifth, and Fourteenth Amendment rights claiming unreasonable seizure of his person, prosecution without probable cause, and unlawful detention. Johnson also asserted pendent state claims of false arrest, false imprisonment, and assault and battery. In August 1988, defendants filed a motion for summary judgment claiming, in part, that they were entitled to qualified immunity. The district court overruled defendants' motion for summary judgment, finding that an issue of fact existed as to whether defendants had probable cause to arrest Johnson. Defendants appeal.

## II.

Defendants claim the district court should have granted them summary judgment because of the qualified good faith immunity of police officers. They claim they did not violate any "clearly established" law when they arrested Johnson and, if they did, the arrest was nevertheless objectively reasonable. In response, Johnson alleges that his arrest by defendants was without probable cause and that defendants violated clearly established law when arresting him because he was arrested for an expression of his opinion, in violation of the First Amendment.

Because the issue of defendants' qualified immunity defense is "purely a legal question to be determined by the trial judge prior to trial," we apply a *de novo* standard of review. *See Arrington v. McDonald*, 808 F.2d 466, 467 (6th Cir.1986).

■ Generally, government officials performing discretionary functions enjoy qualified immunity. This immunity shields them from civil damages liability provided their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 639, 107 S.Ct. at 3038 (citations omitted). The contours of the clearly established right "must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. Thus, the unlawfulness must be apparent in light of preexisting law. *Id.*

In *Anderson*, the Court recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... in such cases those officials—like other officials who act in ways they reasonably believe to be lawful— should not be held personally liable." 483 U.S. at 641, 107 S.Ct. at 3039–40. *See also Davis v. Scherer*, 468 U.S. 183, 196, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984).

Therefore, before granting defendants qualified immunity, we must decide: 1) whether Johnson has identified a clearly established right alleged to have been violated; and, 2) whether a reasonable police officer in either defendants' position should have known that the conduct at issue was undertaken in violation of that right. *See Guercio v. Brody*, 911 F.2d 1179, 1184 (6th Cir.1990) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

■ Johnson claims his First Amendment right of free speech was clearly established and violated by his arrest and detention. Johnson maintains that he should not have been punished for saying

"no" to Overstreet when asked for permission to enter CEI's premises.

Although free speech is a clearly established right, Johnson was not arrested for his speech. By saying "no" to Overstreet when asked to enter the complex, Johnson merely communicated to Overstreet his decision to forbid Overstreet permission to enter CEI's premises in order to pursue the traffic violator. Johnson admits that he: 1) refused Overstreet permission to pass through the gate; 2) had control over the mechanical gate itself; and 3) had the physical means to prevent entry. We conclude that Johnson was not arrested for his speech but, rather, the act of preventing Overstreet from pursuing the traffic violator. Thus, there is no clearly established right which has been violated.

■ But even if there had been a violation of a clearly established right, the district court erred in not determining whether a reasonable police officer could have reasonably believed that Johnson's arrest was lawful. Rather, the court denied defendants qualified immunity merely because material issues of fact existed as to probable cause for the arrest. This is contrary to the holding in *Anderson* which assures qualified immunity to a police officer who reasonably believes that an arrest is lawful. 483 U.S. at 641, 107 S.Ct. at 3039.

■ The proper analysis for determining whether a reasonable police officer would believe that Johnson was violating Ohio Rev.Code § 2921.31 when he prevented Overstreet from entering CEI's complex begins with an examination of section 2921.31. The statute provides:

**Obstructing official business**

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.

(B) Whoever violates this section is guilty of obstructing official business, a misdemeanor of the second degree.

The facts demonstrate that: 1) Overstreet was proceeding with flashing lights in pursuit of a traffic violator; 2) Johnson permitted the traffic violator through the security gate; 3) Johnson did not give Overstreet permission to enter the same security gate; 4) Overstreet was not permitted to enter until after Laccheo arrived; and, 5) Overstreet could not fulfill his official duties until given permission by Johnson. We find that these facts are sufficient to justify a reasonable police officer in believing that Johnson, by refusing to permit Overstreet entry into CEI's facility, intentionally tried to hamper or impede, or "prevent, obstruct, or delay" the issuance of a traffic ticket in violation of Ohio Rev.Code Ann. § 2921.31.

To summarize, defendants are entitled to a qualified immunity defense because they did not violate a clearly established law when arresting Johnson; and, even if such law were violated, a reasonable police officer in like circumstances could have reasonably believed that Johnson's arrest was lawful.

Accordingly, we REVERSE.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

I agree with the court that plaintiff's First Amendment argument is not well taken, nor is the district court's analysis of that argument correct. But the case does not end there.

The court's analysis would lead one to believe that all that was involved here was Johnson's refusal to let Officer Overstreet enter private property. Much more occurred. I refer to the district court's summary of this incident.

Johnson told Officer Overstreet that he could not admit him. Johnson asserts in his complaint that he was not permitted to admit Officer Overstreet to the premises since this was not an emergency. The gate to this entrance was open the entire time Officer Overstreet was present. Officer Laccheo arrived in a

second police car after being called by Overstreet. Johnson then allowed Overstreet entry to CEI. Officer Overstreet issued the traffic citation to the CEI employee. Officer Laccheo requested identification of Johnson. Johnson alleges that after speaking with his supervisor, he provided Officer Laccheo with his Ohio State Security Guard registration card but that Laccheo stated this identification "was not good enough" and requested Johnson's driver's license which Johnson alleges he then provided. Officer Laccheo placed Johnson under arrest for obstructing justice. Officer Laccheo contends that he used physical force to effect the arrest because Johnson attempted to break custody. Johnson contends force was used as a result of his attempt to advise his supervisor that he was being arrested and that Gate #2 would be unguarded.

The arrest occurred after Overstreet finished ticketing the traffic offender and was made by Officer Laccheo for an alleged misdemeanor not committed in his presence. He used force to make the arrest, and plaintiff contends none was called for.

Johnson was less than fully cooperative with the police on two occasions—first, when he initially refused entry to Officer Overstreet and, second, when he called his supervisor before showing his identification to Officer Laccheo. If the officers arrested Overstreet for obstruction of justice on this basis, I would be inclined to extend qualified immunity to them. But, if they made an arrest using more force than necessary simply to flex the muscle of their authority, then they are not entitled to immunity.[1] The district judge concluded that he could not resolve at this juncture which of the parties' versions was the correct one because the facts necessary to resolve this issue were themselves in dispute. I agree.

Although qualified immunity is, as the court states, "a legal question to be deter-

mined by the trial judge," this does not mean that such question cannot be clouded by factual disputes. Defendants brought a summary judgment motion. In order for a summary judgment motion to be granted, the trial judge must be satisfied that there are no genuinely disputed material facts. Whether there are facts in dispute is itself a factual determination and should be reviewed under a clearly erroneous standard. When such a standard is applied, I believe the district judge must be affirmed.

I also believe the court's opinion fails to differentiate between a true qualified immunity motion, which when denied may be the subjection of an interlocutory appeal,[2] and a regular summary judgment motion, which cannot be appealed when denied. I would suggest the following as an illustration. If police officer Doe is sued in a section 1983 action on a false arrest theory and brings a summary judgment motion based on the fact the defendant allegedly has sued the wrong officer, this does not present a pure legal question. In my opinion, the police officer has no interlocutory appeal if the judge denies his summary judgment motion on the basis of it being unclear whether officer Doe actually was involved. I believe this to be true no matter how blatantly erroneous the trial judge's ruling appears to be. In the true qualified immunity situation, these problems are not present. The police officer says, in effect, "Let's assume I did everything the defendant says I did. I'm still off the hook because an objectively reasonable police officer would not have known he was violating a clearly established legal right." Since juries would be ill equipped to determine what is a "clearly established legal right," we have delegated this decision to the judge. But, I repeat, if what the officer actually did, as opposed to the legal effect of what he did, is the basis of

---

1. Police officers have some tough decisions to make that often have to be made quickly and under adverse circumstances. They are entitled to societal as well as judicial protection from personally being held liable for every wrong decision they make under such circumstances.

However, petty tyranny deserves no such protection.

2. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

the dispute,[3] then we evaluate a district court's ruling as well as the right to interlocutory appeal by the same standards we use in reviewing any other type of summary judgment.

I would affirm.[4]

---

3. The officer's state of mind does not enter the qualified immunity calculus. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

4. My vote to affirm does not mean this case may not be the subject of another summary judgment motion, which might be granted. All I would affirm is the trial judge's decision that the case is not ripe for disposition at this time.