983 F.2d 1065
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eric A. ADAMS, Plaintiff-Appellant,
v.
Robert SILVA and Dean Sanderson, Defendants-Appellees.
 No. 91-2395.
 United States Court of Appeals, Sixth Circuit.
 Dec. 22, 1992.
 
 Before RYAN, SUHRHEINRICH and HIGGINBOTHAM,* Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff Eric A. Adams brought this 42 U.S.C. § 1983 action against two Michigan State Police detectives, alleging that they violated his Fourth Amendment right to be free from unreasonable search and seizure. Adams appeals the district court's grant of defendants' motion for summary judgment. The issue on appeal is whether the district court erred in concluding that defendants were entitled to qualified immunity. We think it did not, and affirm.
 
 I.
 
 2
 At approximately 11:45 a.m. on March 9, 1989, defendants Robert Silva and Dean Sanderson, Michigan State Police detectives, executed a search warrant at Adams's residence for an 11" X 25" painting allegedly stolen from a bar in 1981. As the officers, dressed in plain clothes, approached Adams's home in their car, they observed a car backing out of Adams's garage. Adams, the driver of that car, testified that he did not know that defendants were police officers and thought they had come to repossess his car. Adams accelerated his car and drove directly at the defendants, swerving to avoid them at the last minute. Sergeant Sanderson jumped out of his car waving his badge and shouted that he and Silva were police officers. Adams continued to drive away.
 
 
 3
 The officers then conducted a search of the residence. They posted a uniformed Michigan State Police trooper to stand guard outside the house while they conducted the search. However, without informing the defendants, the trooper returned to the police post for flashlights. Meanwhile, the plain-clothed officers conducted an extensive search of the home for the picture. They looked in drawers, shuffled through papers on top of furniture, and otherwise created a mess.
 
 
 4
 Adams returned to his residence a short time later and noticed the unmarked police vehicle in his driveway. Still suspecting that the defendants came to repossess his vehicle, he entered his home from the rear, went to an upstairs bedroom to get his gun, and was exiting his home when he spotted Sanderson in the lower level, rifling through papers in his desk.
 
 
 5
 When Adams discovered Sanderson, he pulled his gun out, pointed it at Sanderson, and shouted, "Freeze, you s.o.b." Sanderson screamed that he was a police officer, showed his badge, and stepped towards Adams. As Adams lowered his gun, defendant Silva approached him from behind to disarm him. According to Adams, the officers muscled him to the ground and kicked and punched him before they arrested and charged him with felonious assault. He was later taken to Providence Hospital where it was observed that he suffered from tenderness in the rib and groin areas, an abrasion to the lip, and a cracked tooth. Ultimately, and after further investigation, the charges against Adams were dismissed.
 
 
 6
 Adams subsequently filed this section 1983 action, alleging false arrest and excessive force. The district court granted defendants' motion for summary judgment on the false arrest claim finding that defendants were immune from suit under the doctrine of qualified immunity. The parties stipulated to the dismissal of the excessive force claim.
 
 II.
 
 7
 Whether the defendants are entitled to qualified immunity is a question of law to be determined by the trial judge prior to trial. Johnson v. Estate of Laccheo, 935 F.2d 109, 111 (6th Cir.1991). Consequently, we apply a de novo standard of review. Id.
 
 
 8
 Adams claims that the district court erred in granting summary judgment on the basis of the police officers' qualified good faith immunity. He argues that a reasonably well-trained officer should have known there was no probable cause to arrest him because he made no threat of violence against the officers, and that his actions were justified as a reasonable act of a homeowner attempting to identify an unknown intruder in his home. In response, defendants argue that they did not violate any "clearly established law" when they arrested Adams and, if they did, the arrest was nevertheless objectively reasonable.
 
 
 9
 Generally, government officials performing discretionary functions enjoy qualified immunity, which shields them from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). To hold an official protected by qualified immunity personally liable, the plaintiff must: (1) identify a clearly established right alleged to have been violated; and (2) establish that a reasonable police officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right. Johnson, 935 F.2d at 111.
 
 
 10
 Although there may be disputed issues of material fact as to whether probable cause existed for Adams's arrest, the district court could not deny the defendants qualified immunity merely on this basis. Such a decision would be contrary to the Supreme Court's holding in Anderson, which assures qualified immunity to a police officer who reasonably believes that an arrest is lawful. 483 U.S. at 641. Consequently, we can resolve this case by determining whether a reasonable police officer in the defendants' positions should have known that the arrest of plaintiff was undertaken in violation of Adams's rights.
 
 
 11
 The defendants arrested Adams for felonious assault; thus, to determine whether a reasonable police officer could have reasonably believed that Adams's arrest was lawful, this court must examine Michigan law on felonious assault. Michigan law defines felonious assault as the assault of another "with a gun, revolver, pistol, ... or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder...." Mich.Comp.Laws Ann. § 750.82 (West 1991). A simple criminal assault in Michigan is "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." People v. Johnson, 407 Mich. 196, 210 (1979). The facts demonstrate that: (1) the officers were surprised by Adams, who pointed a gun at defendant Sanderson's head and shouted "Freeze, you s.o.b."; (2) neither officer knew who Adams was; (3) neither officer heard him enter the home; (4) neither officer knew what happened to the uniformed police officer they had originally stationed outside the residence; and (5) both officers recognized Adams as the individual who had tried to run them over when they first arrived at the premises. Applying Michigan definitions of assault and felonious assault, it is clear that a felonious assault was committed in the officers presence, to say nothing of whether there was mere "probable cause" to believe it had been committed. Therefore, the district court correctly concluded that Adams's conduct, objectively assessed, would have led a reasonable police officer to conclude that probable cause existed to arrest the plaintiff for felonious assault.
 
 III.
 
 12
 We AFFIRM the district court's grant of summary judgment.
 
 
 
 *
 The Honorable A. Leon Higginbotham, Jr., Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation